UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DINH TPONG LE,<br><br>Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN, *et al.*,<br><br>Respondents. | CASE NO. 2:26-cv-02483-GJL<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner Dinh Tpong Le ("Petitioner") is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 1 at ¶ 1; Dkt. 5 at 6. On July 14, 2026, Petitioner, through counsel, filed a Petition for writ of habeas corpus under 28 U.S.C. § 2241, seeking release from custody or, in the alternative, a bond hearing before an Immigration Judge ("IJ") where the Government must prove by clear and convincing evidence "that Petitioner is a flight risk or a danger to the community and that no alternatives to detention would mitigate those risks."[1] Dkt. 1 at 12.

[1] The parties have consented to proceed in this matter before a United States Magistrate Judge. *See* Dkt. 3.

Petitioner also seeks an injunction prohibiting Respondents from placing GPS ankle monitoring on Petitioner upon his release. *Id.*

Respondents to the Petition include Markwayne Mullin (Secretary of the United States Department of Homeland Security), Todd Blanche (Acting Attorney General of the United States), Bruce Scott (Warden of the NWIPC), Julio Hernandez (Acting Field Office Director for ICE's Seattle Field Office), and David Venturella (Acting Director, ICE) (collectively "Respondents").

On July 15, 2026, the Court ordered Respondents to show cause why a writ of habeas corpus should not be granted. Dkt. 2. The Petition has been fully briefed. Dkts. 1, 5, 8.

Having considered the Parties' submissions, the balance of the record, and the governing law, the Court **GRANTS in part** and **DENIES in part** the Petition (Dkt. 1) and **ORDERS** Respondents to provide an individualized bond hearing as set forth in the conclusion below.

## I. FACTUAL BACKGROUND

Petitioner is a citizen of Vietnam who entered the U.S. on January 24, 2025. Dkt. 1 at ¶ 20–22. He was apprehended upon entry and was taken into immigration custody on January 27, 2025. *Id*. at ¶ 22–24. Petitioner has never been released and has remained in continuous ICE custody since that date. *Id.* at ¶¶ 22, 25.

On June 19, 2025, after a credible fear determination, Petitioner was issued a Notice to Appear ("NTA") charging him as inadmissible under INA § 212(a)(6)(A)(i) and placing him in removal proceedings. Dkt. 6 at ¶ 5; Dkt. 7-3 at 2. On October 20, 2025, an IJ in Tacoma, Washington ordered Petitioner removed to Vietnam. Dkt. 1 at ¶ 26; Dkt. 5 at 4. On November 18, 2025, Petitioner timely filed an appeal to the Board of Immigration Appeals, which remains

pending. Dkt. 1 at ¶ 27; Dkt. 6 at ¶ 6. Petitioner is not subject to any administratively final order of removal, and his removal proceedings remain ongoing. Dkt. 1 at ¶ 27.

Petitioner alleges he was "taken into custody without any individualized assessment that he posed a flight risk or danger to the community" and "Respondents have never provided Petitioner with a bond hearing or any other individualized custody determination before a neutral decisionmaker[, n]o neutral decisionmaker has ever assessed whether Petitioner poses a flight risk or a danger to the community, and the Government has never been required to justify his continued detention." Dkt. 1 at ¶¶ 28–29. Respondents do not rebut Petitioner's allegations. *See* Dkt. 5.

Petitioner has been detained since January 27, 2025, a period of approximately nineteen (19) months. Dkt. 1 at ¶ 32. It is undisputed that Petitioner has no criminal history. Dkt. 7-1 at 2; Dkt. 8 at 11.

## II. LEGAL STANDARD

Federal courts have authority to grant writs of habeas corpus to individuals in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). To obtain habeas relief, a habeas petitioner must prove by the preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

//

//

## III. DISCUSSION

Petitioner contends his prolonged detention is unconstitutional. Dkt. 8 at 6–10; *see also* Dkt. 1. Respondents do not dispute that Petitioner's detention has become prolonged, but they contend Petitioner is permissibly detained under 8 U.S.C. § 1225(b). Dkt. 5 at 6, 8. Petitioner does not supply an alternative detention authority. *See* Dkt. 8 at 8 ("The issue is not whether DHS initially had authority to detain Petitioner. It plainly did.").

Neither the Supreme Court nor the Ninth Circuit have settled on a test for assessing the constitutionality of prolonged mandatory detention. *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1116 (W.D. Wash. 2019). Consequently, "district courts have grappled with how to address due process challenges to prolonged mandatory detention[.]" *Id.* And, "[n]early all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process." *Id.* (cleaned up).

In assessing the constitutionality of prolonged mandatory detention, the Court in *Banda* declined to apply the test in *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976), because the test does "not resolve the more fundamental issue of whether any procedure—such as a bond hearing—must be provided." *Banda*, 385 F. Supp. 3d at 1106–07. Rather, the Court in *Banda* conducted a case-specific analysis considering the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceeding caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Id.* at 1106 (quoting *Jamal A v. Whitaker*, 358 F. Supp. 3d 853, 853–59 (D. Minn. 2019)). Courts in this District have now adopted the "*Banda* test" to assess when detention violates due process. *See, e.g.*, *Toktosunov v. Wamsley*, No. 2:25-cv-1724-TL, 2025 WL 3492858, at *4–7 (W.D.

Wash. Dec. 5, 2025); *Belqasim v. Hermosillo*, No. 2:25-cv-1282-LK, 2025 WL 3466971, at *7–10 (W.D. Wash. Oct. 28, 2025), *report and recommendation adopted*, 2025 WL 3170929 (W.D. Wash. Nov. 13, 2025); *Maliwa v. Scott*, No. 2:25-cv-0788-TMC, 2025 WL 2256711, at *3–4 (W.D. Wash. Aug. 7, 2025); *Hong v. Mayorkas*, No. 2:20-cv-1784-LK, 2022 WL 1078627, at *4–5 (W.D. Wash. Apr. 11, 2022).

The Respondents acknowledge that courts in this District analyze this issue using the *Banda* multi-factor test. Dkt. 5 at 5. The Court will likewise apply the *Banda* test to determine if Respondents have met their burden to justify Petitioner's continued detention without a bond hearing.

**A. The *Banda* Factors**

1. Total Length of Detention

"[T]he most important factor" under the *Banda* test is the length of detention. *Banda*, 385 F. Supp. 3d at 1118. The "context" of a petitioner's circumstances is crucial to keep in mind, particularly that "[t]he detention that is being examined here is the detention of a human being who has never been found to pose a danger to the community or to be likely to flee if released." *Jamal A.*, 358 F. Supp. 3d at 859. "The longer mandatory detention continues . . . the harder it is to justify." *Murillo-Chavez v. Garland*, No. 2:22-cv-0303-LK, 2022 WL 16555994, at *5 (W.D. Wash. Aug. 30, 2022), *report and recommendation adopted*, 2022 WL 16553176 (W.D. Wash. Oct. 31, 2022).

In the wake of *Banda*, courts in the Western District of Washington have considered a range of periods that favor the detainee. *Ashemuke v. ICE Field Off. Dir.*, No. 2:23-cv-1592-RSL, 2024 WL 1683797, at *4 (W.D. Wash. Feb. 29, 2024), *report and recommendation adopted*, 2024 WL 1676681 (W.D. Wash. Apr. 18, 2024) (eleven months); *Rahman v. Garland*,

No. 2:24-cv-02132-JHC, 2025 WL 1920341, at *3 (W.D. Wash. June 26, 2025), *report and recommendation adopted sub nom*; *Anisur R. v. Garland*, 2025 WL 1919252 (W.D. Wash. July 11, 2025) (twelve months); *Murillo-Chavez v. Garland*, No. 2:22-cv-303-LK, 2022 WL 16555994, at *5 (W.D. Wash. Aug. 30, 2022), *report and recommendation adopted*, 2022 WL 16553176 (W.D. Wash. Oct. 31, 2022) (nineteen months); *Doe v. Bostock*, No. 2:24-cv-0326-JLR, 2024 WL 3291033, at *10 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (fifteen months); *Djelassi v. ICE Field Off. Dir.*, 434 F. Supp. 3d 917, 929–30 (W.D. Wash. 2020) (eighteen months).

Here, Petitioner has been detained for more than eighteen months. Dkt. 8 at 1. Respondents "acknowledge that Petitioner's detention has become prolonged" and "this factor should favor Petitioner." Dkt. 5 at 6.

The Court agrees and finds the first *Banda* factor weighs strongly in favor of Petitioner.

2. Likely Duration of Future Detention

The second factor requires consideration of "how long the detention is likely to continue absent judicial intervention; in other words, the 'anticipated duration of all removal proceedings—including administrative and judicial appeals.'" *Banda*, 385 F. Supp. 3d at 1119 (quoting *Jamal A.*, 358 F. Supp. at 859). In *Banda*, for example, the Court noted that the petitioner had recently filed an appeal of a removal order with the BIA. *Id.* As the court explained, if the BIA were to affirm the removal order, the petitioner could seek review in the Ninth Circuit. *Id.* That process, the court found, might "take up to two years or longer." *Id.* (citation omitted). Thus, the *Banda* court found that the factor favored granting the petitioner a bond hearing. *Id*.

Respondents argue that "this Court should find this factor to be neutral" because any estimate of future detention would be speculative. Dkt. 5 at 6. However, as previously stated, on November 18, 2025, Petitioner filed an appeal of his removal order with the BIA. Dkt. 6 at ¶ 6. It is therefore likely that Petitioner will face additional time in custody. *See e.g.*, *Garcia Puron v. Hernandez*, No. 2:26-CV-01428-TLF, 2026 WL 1660337, at *4 (W.D. Wash. June 9, 2026) ("Courts in this District have observed that BIA appeals can take over six months. And if petitioner's appeal to the BIA is denied he has the right to appeal to the Ninth Circuit Court of Appeals."). The Court therefore finds this second *Banda* factor weighs in favor of Petitioner. *See Banda*, 385 F. Supp. 3d at 1119 (finding the length of appeal favored the petitioner).

Accordingly, the Court finds the second *Banda* factor weighs in favor of Petitioner.

3. <u>Conditions of Detention</u>

Next, the Court considers the conditions of detention. "The more that the conditions under which the noncitizen is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Banda*, 385 F. Supp. 3d at 1119 (citation omitted). Courts have recognized that the conditions at NWIPC are "similar . . . to those in many prisons and jails." *Maliwat*, 2025 WL 2256711, at *6; *Toktosunov*, 2025 WL 3492858, at *5; *Rahman*, 2025 WL 1920341, at *4 (citing cases). Respondents cling to the rather thin position that, "Petitioner has not raised issues that impact him more than any other person detained at the NWIPC." Dkt. 5 at 6. Respondents' argument is unavailing: severe conditions of confinement that affect all detainees do not serve to negate the effects on a single detainee.

Thus, the Court finds the third *Banda* factor also favors Petitioner. *See Amhirra v. Warden*, No. 2:25-cv-1376-TL, 2025 WL 3718994, at *7 (W.D. Wash. Dec. 23, 2025); *Rahman*,

2025 WL 1920341, at *4; *Martinez v. ICE Field Off. Dir.*, No. 2:26-cv-00032-JNW, 2026 WL 575188, at *3 (W.D. Wash. Mar. 2, 2026).

4. Delays in Removal Proceedings (Petitioner)

The fourth factor considers the nature and extent of any delays in the removal proceedings caused by Petitioner. Noncitizens are "entitled to raise legitimate defenses to removal . . . and such challenges to his removal cannot undermine his claim that detention has become unreasonable." *Martinez v. Clark*, No. 2:18-cv-1669-RAJ, 2019 WL 5968089, at *10 (W.D. Wash. May 23, 2019), *report and recommendation adopted*, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019). Courts, however, should be "sensitive to the possibility that dilatory tactics by the removable [noncitizen] may serve not only to put off the final day of deportation, but also to compel a determination that the [noncitizen] must be released because of the length of his incarceration." *Id.*

Here, Respondents concede that "there is no evidence that Petitioner has intentionally caused any delay[,]" and "this [fourth] factor likely favors Petitioner." Dkt. 5 at 6.

The Court agrees and finds that fourth *Banda* factor favors Petitioner.

5. Delays in Removal Proceedings (Respondent)

The fifth Banda factor considers delays attributable to the Government. "If immigration officials have caused delay, it weighs in favor of finding continued detention unreasonable…Continued detention will also appear more unreasonable when the delay in the proceedings was caused by the immigration court or other non-ICE government officials." *Sajous v. Decker*, No. 18-2447, 2018 WL 2357266, at *11 (S.D.N.Y. May 23, 2018).

As with Petitioner, there is no evidence to suggest the Government has engaged in deliberate delay tactics. Nevertheless, courts have found this factor weighs in favor of the

petitioner even when delays are not the result of an intentional action on behalf of the Government. *See Martinez*, 2019 WL 5968089, at *10; *Chekhovskii v. Scott*, No. 2:25-CV 02550-TLF, 2026 WL 353265, at *5 (W.D. Wash. Feb. 9, 2026) (collecting cases). The Court therefore observes that any delays here "appear[] to have stemmed from the BIA's and Ninth Circuit's crowded dockets." *Djelassi v. ICE Field Off. Dir.*, 434 F. Supp. 3d 917, 931 (W.D. Wash. 2020). "Although not the result of intentional action on behalf of government officials, this delay is attributable to the Government." *Id.*

Thus, the Court finds the fifth *Banda* factor likewise favors Petitioner.

6. <u>Likelihood of Final Order of Removal</u>

Under the final *Banda* factor, the Court considers the likelihood that the removal proceedings will result in a final order of removal. *Banda*, 385 F. Supp. 3d at 1120 (citation omitted). Here, Respondents argue that "[i]t is unknown whether Petitioner's appeal at the BIA will provide him relief or result in a final order of removal." Dkt. 5 at 6. Petitioner agrees that "[o]n the present record[,] this factor is properly treated as neutral[.]" Dkt. 8 at 11.

The Court does not possess sufficient information at this juncture to determine whether Petitioner will ultimately prevail. Accordingly, the Court concludes the sixth *Banda* factor does not weigh in favor of either party.

7. <u>Weighing the Factors</u>

In sum, five of the six *Banda* factors weigh in favor of granting Petitioner a bond hearing, and one of the factors is neutral. Notably, the most important factor—the length of detention—strongly weighs in Petitioner's favor. *See Banda*, 385 F. Supp. 3d at 1118. Since five of the *Banda* factors favor Petitioner, the Court concludes that the *Banda* test as a whole favors Petitioner, and that his "continued mandatory detention under § 1225(b) has become

unreasonable and that due process requires the Government to provide him with a bond hearing." *Id.* at 1120; *see e.g.*, *Martinez v. ICE Field Off. Dir.*, No. 2:26-cv-00032-JNW, 2026 WL 575188, at *4 (W.D. Wash. Mar. 2, 2026).

**B. Appropriate Relief**

Having found Petitioner's detention has become unreasonable, the Court turns to the scope of habeas relief.

1. <u>Petitioner's First Request</u>

In his Petition, Petitioner asks the Court to order his immediate release or, in the alternative, order "Respondents to provide Petitioner with an individualized bond hearing before an Immigration Judge within seven (7) days, where Respondents must prove by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no alternatives to detention would mitigate those risks[.]" Dkt. 1 at 12.

The remedy for prolonged detention at this procedural posture is a bond hearing, not release. *L.B.O.M. v. Hermosillo*, No. 2:25-CV-02695-GJL, 2026 WL 266068, at *6 (W.D. Wash. Feb. 2, 2026) (collecting cases). In particular, the Petitioner is entitled to an individualized bond hearing that comports with the requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011) (clarifying that "the government should be held to a clear and convincing evidence standard of proof" and requiring a contemporaneous record of the proceedings).

Accordingly, the Court **GRANTS in part** Petitioner's first request for relief as set forth in the conclusion below.

2. <u>Petitioner's Second Request</u>

Finally, Petitioner also requests this Court "[e]njoin Respondents from placing GPS ankle monitors on Petitioner upon his release, absent clear and convincing evidence that Petitioner is a

flight risk or a danger to the community and that no other alternatives would mitigate those risks[,]" but Petitioner tenders no argument or authority to support this request. Dkt. 1 at 12. Further, the record does not support a finding that Petitioner is likely to be placed on GPS ankle monitoring upon any speculative release. Accordingly, the Court **DENIES** Petitioner's second request for relief without prejudice.

## IV. CONCLUSION

Based on the foregoing reasons, the Court **GRANTS in part** and **DENIES in part, without prejudice,** the petition for writ of habeas corpus (Dkt. 1) and **ORDERS** as follows:

(1) Petitioner's prolonged detention without a bond hearing violates the Due Process Clause of the Fifth Amendment;

(2) Respondents **SHALL provide** Petitioner with an individualized bond hearing before an immigration judge **within seven days of this Order**—unless the hearing is continued at the Petitioner's request. The Government **SHALL** bear the burden of proof by clear and convincing evidence that Petitioner is a danger to the community or poses a risk of flight. The Government **MUST** create a contemporaneous record of the proceedings;

(3) If a bond hearing is not provided within seven days of the date of this Order, or within the period of continuance requested by Petitioner, Respondents **SHALL release** Petitioner **no later than the eighth day after the date of this Order**, or the day following the period of continuance requested by Petitioner, subject to reasonable conditions of supervised release; and

(4) Respondents **SHALL file** a declaration with the Court confirming that Petitioner received a bond hearing—and the results of that hearing—or otherwise confirming Petitioner's request for a continuance or his release by **September 21, 2026**.

Finally, the Court will entertain post-judgment requests for attorney's fees, as requested

//

//

//

in the Petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 11th day of September, 2026.

Grady J. Leupold
United States Magistrate Judge